## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| **IBHAR AL MHEID, MD,**<br><br>    *Plaintiff,*<br><br>**v.**<br><br>**KATY MINCHEW,**<br>**ROBERT SCHOLLMEYER, and**<br>**ARMOR HEALTH, INC.,**<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br>**3:23-cv-00105-TES** |

### ORDER OF DISMISSAL

Pro se Plaintiff Ibhar Al Mheid brought this action on June 3, 2022, seeking relief under 42 U.S.C. § 1983 and state law. *See generally* [Doc. 1]; [Doc. 55]. In the early stages of this nearly two-year-old case, Plaintiff embarked on a collision course with Federal Rules of Civil Procedure 37(b) and 41(b). Despite the Court's pro se deference, leeway, considerable patience, and multiple warnings, Plaintiff remains steadfast in his refusal to comply with this Court's rules and orders and with the Federal Rules of Civil Procedure. Thus, as explained in further detail below, the Court exercises the discretion afforded to it by Federal Rules of Civil Procedure 37(b) and 41(b) and **DISMISSES** this action **with prejudice**.

## BACKGROUND

### A.    Factual Background

This case arises out of Plaintiff's arrest, prosecution, and pre-trial detention at the Athens-Clarke County (ACC) Jail for various alleged crimes against a woman named Grace Wright. [Doc. 55, ¶¶ 8–9]; [Doc. 21-1, pp. 64, 71, 76]. Defendant Katy Minchew was the ACC Police Officer who investigated and arrested Plaintiff, Defendant Robert Schollmeyer was the Assistant District Attorney for the Western Judicial Circuit of the State of Georgia who prosecuted Plaintiff's case, and Defendant Armor Health was the healthcare provider at the ACC Jail. [Doc. 55, ¶¶ 2–3].

Plaintiff, a Medical Doctor and resident of DeKalb County, Georgia, began dating Ms. Wright in May 2019 while she attended the University of Georgia in Athens. [*Id.* At ¶ 1]; [Doc. 21-1, p. 71]. Their brief relationship ended in some sort of dispute, which resulted in two warrants being issued for Plaintiff's arrest and may have motivated Ms. Wright's move to Brunswick, Georgia. [Doc. 55, ¶¶ 10, 17–19]; [Doc. 1-2, ¶¶ 18, 66, 22–23]; [Doc. 1-2, pp. 64–65, 86, 88–89, 103, 105]; [Doc. 21-1, pp. 3, 6–7, 9, 20, 54, 86, 112]. Plaintiff was arrested on his outstanding warrants on December 15, 2020, but was released on bond. [Doc. 55, ¶¶ 17–19]; [Doc. 1-2, ¶ 18]. Arguably, his bond conditions prohibited him from contacting Ms. Wright, her family, or related third parties. *See* [Doc. 1-2, pp. 89]; [Doc. 21-1, p. 7].

A few days later, Ms. Wright notified Defendant Minchew that Plaintiff had

violated his bond conditions by sending her text messages, using a new random phone number each time she blocked the previous number. [Doc. 21-1, pp. 6, 48]. The random phone numbers were apparently generated by a phone-spoofing app, and Defendant Minchew swore out a search warrant to obtain records from the app. [*Id.* at p. 112]; [Doc. 1-2, pp. 103, 105]. According to Defendant Minchew, the information she gathered through her search warrant confirmed that Plaintiff was indeed the source of the text messages, so on December 22, 2020, Defendant Minchew obtained a third warrant for Plaintiff's arrest, this time for aggravated stalking. [Doc. 21-1, p. 9]; [Doc. 1-2, ¶¶ 22–23].

Plaintiff agreed to a consent bond on March 16, 2021, which allowed him to surrender himself to the ACC Jail on the aggravated stalking warrant. [Doc. 1-2, pp. 91–92]. As conditions for the consent bond, Plaintiff agreed to "stay away from [Ms. Wright], her home, job and school or any place where said person is present" and to "not have contact directly, or indirectly, in person, through third parties, by telephone, e-mail, text message, or any other form of communication or contact" with her. [*Id.*]. Plaintiff surrendered himself to the ACC jail on March 24, 2021, and was released the same day, subject to the terms of the March 16, 2021, consent bond order. [*Id.* at ¶ 29].

A few months later, Ms. Wright notified Defendant Minchew that Plaintiff had emailed Ms. Wright to discuss her move to Brunswick and express his desire to rekindle their relationship. [Doc. 21-1, pp. 16–17, 64]. After investigating the emails, Defendant Minchew applied for two more warrants in ACC for Plaintiff's arrest on May 20, 2021,

3

and Defendant Schollmeyer filed a motion to revoke Plaintiff's bond. [Doc. 1-2, p. 106]; [Doc. 55, ¶¶ 8–9]. Plaintiff argues that Defendant Minchew framed the warrant affidavits to suggest that Plaintiff had committed offenses within ACC's territorial limits, even though she knew that neither Plaintiff nor Ms. Wright were in ACC at the time of the supposed contact. [Doc. 55, ¶ 41].

Defendant Minchew executed the arrest warrants on May 28, 2021. [*Id.* at ¶¶ 1, 12]. Defendant Minchew traveled to the Atlanta area, arrested Plaintiff at his place of work, seized his cellphone, and transported him to the ACC Jail. [*Id.* at ¶ 11]. Plaintiff claims that Defendant Minchew used excessive force by placing him in "filthy ankle shackles," which she "cruelly tightened over a friable lesion" on Plaintiff's right leg. [*Id.* at ¶ 68]. Plaintiff also claims that Defendant Minchew seized and searched his phone without a warrant. [*Id.* at ¶ 76].

During his stay at the ACC Jail, Plaintiff alleges that Defendant Armor Health denied him adequate medical care for the lesion on his right leg, which became infected after Plaintiff's arrest. [*Id.* at ¶ 81]. Specifically, Plaintiff claims that Armor Health followed its "deliberately indifferent standing policy that deprives inmates of any standard of care therapy requiring [intravenous] administration" and treated his infection "with months of improperly dosed oral antibiotics." [*Id.* at ¶¶ 82–83].

At Plaintiff's bond revocation hearing on June 2, 2021, Defendant Schollmeyer called two witnesses: Ms. Wright and Defendant Minchew. [*Id.* at ¶¶ 12–13]. Plaintiff

argues that Defendant Schollmeyer suborned false statements from his witnesses to establish a basis for Plaintiff's charges. [*Id.* at ¶¶ 12, 59]. Plaintiff also claims that Defendant Schollmeyer falsely asserted that Plaintiff's license to practice medicine had been indefinitely suspended and that Plaintiff was the subject of a federal investigation. [*Id.* at ¶¶ 12, 14]. The Superior Court Judge revoked Plaintiff's bond and ordered his detention at the ACC Jail pending trial. *See* [*id.* at ¶ 19]. Plaintiff remained in pre-trial detention until February 17, 2022, when the State nolle prossed his charges because of insufficient evidence and lack of jurisdiction. [*Id.* at ¶ 35].

### B.    Procedural Background

This case's procedural history is a bit convoluted. Plaintiff launched this lawsuit pro se on June 3, 2022, by filing a Complaint [Doc. 1] in the United States District Court for the Northern District of Georgia. Defendant Minchew filed an Answer, and the remaining Defendants moved to dismiss. [Doc. 10]; [Doc. 11]; [Doc. 12]; [Doc. 14]. As would become common for Plaintiff, he ignored his deadlines to respond. A full week after his last deadline to respond, Plaintiff hired counsel who filed a belated Motion for Extension of Time [Doc. 18] to respond to Defendants' motions, which the Northern District granted. [Doc. 17]; [Doc. 18]. However, Plaintiff never responded to Defendants' motions to dismiss. Instead, on the day his responses were due, he filed a Consent Motion to Amend his Complaint, which the Northern District granted. [Doc. 19].

Plaintiff filed his First Amended Complaint [Doc. 21] on October 8, 2022, and

Defendants again moved to dismiss. *See* [Doc. 29]; [Doc. 30]; [Doc. 32]. Soon thereafter, Plaintiff again requested an extension of time to respond, and Plaintiff's counsel withdrew from the case. [Doc. 34]; [Doc. 35]. The Northern District granted Plaintiff's motion, extending Plaintiff's deadlines to respond until November 25 and 28, 2022. *See* Order Granting Consent Motion for Extension of Time, *Mheid v. Minchew et al.*, No. 1:22-cv-2225-VMC (N.D. Ga. Nov. 14, 2022). On December 19, 2022, having received no responses from Plaintiff, the Northern District issued an order sua sponte extending Plaintiff's deadlines again until January 6, 2023. [Doc. 37]. Four days past his deadlines, and again without filing any responses, Plaintiff moved to either withdraw his First Amended Complaint and proceed on his original Complaint or, in the alternative, file a second amended complaint. [Doc. 38]. Before ruling on that motion, the Northern District transferred this case to this District. [Doc. 42].

Following the transfer, this Court denied Plaintiff's motion to withdraw his First Amended Complaint but granted him permission to file a motion to amend by October 16, 2023. [Doc. 45]. More than a week after the deadline had passed, Plaintiff simply filed a Second Amended Complaint [Doc. 56]. On motion by Defendants Schollmeyer and Minchew, the Court struck Plaintiff's Second Amended Complaint because it was legally ineffective. [Doc. 50, p. 4]; [Doc. 48]; *see* Fed. R. Civ. P. 15(a). The Court then turned to Plaintiff's First Amended Complaint, struck it sua sponte upon finding that it was a shotgun pleading, and ordered Plaintiff to file a Third Amended Complaint by

December 28, 2023. [Doc. 50, pp. 4, 9].

Notwithstanding the clear deadline, Plaintiff blew past it once again by nearly a full week and then filed a Motion to Amend [Doc. 51]. Even though Plaintiff missed another deadline and did not follow the Court's clear instructions, the Court nonetheless granted his motion and ordered him to file an amended complaint by February 7, 2024. [Doc. 54]. Plaintiff timely filed his Third Amended Complaint [Doc. 55], and then Defendants Minchew and Schollmeyer once again filed motions to dismiss that are currently pending. [Doc. 56]; [Doc. 57].

This case finally appeared to be getting its legs under it when the Court issued a Rules 16 and 26 Order [Doc. 65] on March 23, 2024, requiring the Parties to hold a scheduling conference and to submit a Proposed Scheduling and Discovery Order by April 22, 2024. As ordered, the Court received an email from Defendant Robert Schollmeyer with the requisite Proposed Scheduling and Discovery Order attached, but the email and attached proposed order indicated that Plaintiff failed to cooperate and did not attend the scheduling conference.

Two days later, the Court ordered Plaintiff "to show cause by Friday, May 3, 2024, why this action should not be dismissed for his failure to comply with this Court's Rules 16 and 26 Order." [Doc. 70, p. 5 (cleaned up)]. Plaintiff never responded.

## DISCUSSION

### A.    Legal Standard

District courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962)); *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1243 (11th Cir. 2023). One of the many tools courts use to police their dockets is Federal Rule of Civil Procedure 37(b), which gives "district judges broad discretion to fashion appropriate sanctions for violation of discovery orders." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). "Dismissal with prejudice is the most severe Rule 37 sanction and is not favored." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). It is appropriate, however, "when a plaintiff's recalcitrance is due to willfulness, bad faith or fault." *Welch v. Comcar Indus.*, 139 F. App'x 138, 139 (11th Cir. 2005) (per curiam) (quoting *Phipps*, 8 F.3d at 790).

"A district court also possesses the power to dismiss an action under [Federal Rule of Civil Procedure] 41(b) for failure to comply with court orders generally." *Haji v. NCR Corp.*, 834 F. App'x 562, 563 (11th Cir. 2020) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)); *see Moon*, 863 F.2d at 837 (affirming a district court's order of dismissal for failure to obey an order, noting that the plaintiff's "conduct and words evidence a refusal to acknowledge the authority of the magistrate [judge] and indicate no willingness to comply with court orders"); *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th

Cir. 1985). A court dismissing an action under Rule 41(b) must make two findings: "(1) a clear record of delay or willful contempt; and (2) that lesser sanctions would not suffice." *Haji*, 834 F. App'x at 563 (citing *Goforth*, 766 F.2d at 1535). Willful contempt is more than mere delay; rather, it is willful delay that prolongs the case. *Jacobs v. Clayton Cnty. Solic. Gen. Off.*, 685 F. App'x 824, 826–27 (11th Cir. 2017). Moreover, "[w]hile dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon*, 863 F.2d at 837.

A plaintiff's pro se status does not grant him license to ignore the Federal Rules or court orders, and it does not shield him from the consequences if he fails to comply. *See id.* ("[O]nce a pro se . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."). There is no doubt that "[c]ourts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of legal education." *Haji*, 834 F. App'x at 563 (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "However, pro se litigants who ignore discovery orders are subject to sanctions like any other litigant." *Id.* (citing *Moon*, 863 F.2d at 837).

As explained in further detail below, Plaintiff has engaged in a pattern of delay and willful contempt, and lesser sanctions will not suffice. Thus, dismissal of Plaintiff's action is warranted under the facts of this case. *See Haji*, 834 F. App'x at 563 (citing

*Goforth*, 766 F.2d at 1535).

**B.    Plaintiff's Pattern of Delay and Willful Contempt**

The Court first turns to Plaintiff's "clear record of delay" and "willful contempt." *Id.* Plaintiff has failed, time and time again, to abide by this Court's rules and orders, reaching well beyond the bounds of reason or negligence, and needlessly prolonging this case. *See id.*; *Jacobs*, 685 F. App'x at 826–27.

Our law is well established that a district court has broad discretion to dismiss for failing to comply with court orders in cases like this one. The Supreme Court of the United States staked out what might be the outer edges of a district court's discretion in *Link v. Wabash Railroad Co.*, where the Court affirmed a district court's dismissal under Rule 41(b) after the plaintiff's attorney failed to appear at a pretrial conference. 370 U.S. 626, 633 (1962); Fed. R. Civ. P. 41(b). The Eleventh Circuit has also recognized a district court's broad discretion in this context on many occasions. *See, e.g., Goforth*, 766 F.2d 1533 (affirming a district court's dismissal where plaintiff's counsel failed to submit a preliminary statement and disobeyed the court's instruction to be ready to proceed with trial); *Heath v. Terrell Cnty. Sch. Dist.*, 815 F. App'x 316 (11th Cir. 2020) (affirming a district court's dismissal where a pro se plaintiff did not attempt to obtain evidence to prove her case, repeatedly failed to produce correct evidence, and ignored numerous court orders); *Shortz v. City of Tuskegee*, 352 F. App'x 355, 359–60 (11th Cir. 2009); *see also Amaechi v. GEICO*, No. 5:20-cv-00442-TES, 2021 WL 5413658 (M.D. Ga. Sept. 12, 2021),

*aff'd*, No. 22-13450, 2024 WL 710546 (11th Cir. Feb. 21, 2024) (dismissing a case after warning a pro se plaintiff at least three times that her continued failure to comply with discovery orders could result in dismissal); *Amerson v. Comm'r, Ga. Dept. of Corrs.*, No. 20-11179, 2022 WL 628418 (11th Cir. Mar. 4, 2022).

Here, Plaintiff has repeatedly missed deadlines and violated several court orders. The Court documented the details of Plaintiff's repeated disregard of the Court's orders throughout this case in its Show Cause Order, but briefly recaps them here. *See* [Doc. 70, pp. 2–4]. Plaintiff ignored his deadlines to respond to Defendants' motions to dismiss his original Complaint, his deadlines to respond to Defendants' motions to dismiss his First Amended Complaint (not once, but twice), and his deadline to file his Third Amended Complaint. *See* [*id.* at pp. 2–4]. More importantly, Plaintiff also disregarded the Court's order pertaining to his second motion to amend, and he apparently made no attempt to comply with the Court's order to attend the scheduling conference and cooperate in preparing a Proposed Scheduling and Discovery Order. *See* [*id.* at pp. 1–2, 3–5]; [Doc. 45]. If he did, the show-cause order was his opportunity to say otherwise.

Now, after missing at least four deadlines and violating at least two court orders, Plaintiff has violated a court order for the third and final time. [Doc. 70]. As discussed above, the Court ordered Plaintiff to show cause by May 3, 2024, why this action should not be dismissed for his failure to comply with the Court's Rules 16 and 26 Order. [*Id.*]. That deadline has come and gone, and Plaintiff has again ignored the Court, filing

11

nothing in response.

To be sure, missing a deadline is often a simple procedural hiccup. *See, e.g., Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005). But Plaintiff's behavior goes far beyond one simple mistake. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1375 (11th Cir. 1999) (affirming dismissal under Rule 37 and 41 based on the plaintiff's "behavior which interfered with the process of discovery," "flouting of the district court's order," and "unwillingness or inability to comply with the civil rules, ordinary and expected litigation procedures, and the orders of [the] court").

This case is similar to *Shortz*, where the Eleventh Circuit affirmed a district court's dismissal with prejudice for a plaintiff's "failure to comply with the court's repeated orders to respond to the defendants' discovery requests" despite warnings that failure to comply with the court's orders could result in dismissal. 352 F. App'x at 359–60. *Shortz* held that because the plaintiff "failed to enunciate any compelling reason for failing to comply with the court's repeated orders . . . the district court correctly found that [the plaintiff's] failure to comply was a result of willfulness or bad faith." *Id.* at 359–60 (citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)). Like in *Shortz*, Plaintiff has failed to follow court orders in the face of repeated warnings that his failure to comply could result in dismissal. Also like the plaintiff in *Shortz*, Plaintiff never explained his failures to comply, even when ordered to do so, signaling that his pattern of noncompliance was, and continues to be, willful. *See id.*

The Court acknowledges that Plaintiff is not an attorney, but he is also far from unsophisticated. According to Plaintiff, he is a "Board-Certified Internal Medicine and Cardiovascular Disease specialist," a "renowned cardiovascular researcher and primary author of many scientific manuscripts" who has been published "in preeminent peer-reviewed medical journals." [Doc. 46, ¶¶ 1, 106]. The Court doesn't doubt Plaintiff's intellectual horsepower one bit. Setting aside the merits of his legal arguments, Plaintiff has proven his ability to research case law, marshal facts, and write on a level that is uncommon for pro se litigants. All the same, the Court has been more than patient and has afforded Plaintiff significant lenience. *See Haji*, 834 F. App'x at 563.

This record easily and clearly shows that Plaintiff took the Court's lenience for granted, disregarded court orders and rules at nearly every turn, and consumed scarce judicial resources in the process. *See Moon*, 863 F.2d at 837. It goes without saying that the Court's patience is at an end. Thus, the Court finds that Plaintiff's clear pattern of delay and willful misconduct in this case justifies dismissal with prejudice. *See id.*

C.    **Lesser Sanctions Will Not Suffice**

The Court considered options other than dismissal, such as monetary sanctions, but Plaintiff's refusal to change course despite the Court's repeated warnings demonstrates that further admonition is unlikely to yield different results. A district court need not state that it considered lesser sanctions prior to dismissing a case under Rule 37, although this is "good practice." *Phipps v. Blakeney*, 8 F.3d 788, 791 (11th Cir.

1993). Before dismissing under Rule 41(b), however, a court must find "that lesser sanctions would not suffice." *Haji v. NCR Corp.*, 834 F. App'x 562, 563 (11th Cir. 2020) (citing *Goforth*, 766 F.2d at 1535). Because the Court is dismissing this action under both Rules 37(b) and 41(b), the Court will provide its reasons for finding that lesser sanctions would be inadequate.

The Court warned Plaintiff at least four times that the Court could dismiss his case if he did not follow the rules and court orders, and the Court has gone out of its way to ensure that Plaintiff understood the implications of a dismissal. [Doc. 45, p. 3]; [Doc. 50, pp. 8–9]; [Doc. 65, p. 2], [Doc. 70, p. 5]. These repeated warnings have consistently gone unheeded. The Court first warned Plaintiff eight months ago in the Court's Order granting Plaintiff leave to refile his second motion to amend. [Doc. 45]. The Court cautioned Plaintiff that if he did not refile, "this case could be dismissed," and "advise[d] Plaintiff that a dismissal—even without prejudice—might cause his claims to be time-barred." [*Id.* at p. 3]. With Plaintiff's pro se status in mind, the Court explained that "even a dismissal without prejudice *can* function as a dismissal *with* prejudice if the applicable statute of limitations has run" and directed Plaintiff's attention to relevant case law. [*Id.* (citing *Stephenson v. Doe*, 554 F. App'x 835, 837 (11th Cir. 2014))]. To be fair, this first warning was not a threat to dismiss under Rule 41(b)— rather, it was an attempt to caution Plaintiff that he stood in a precarious procedural position. However, this first warning removes any doubt that Plaintiff has understood

the possibility and implications of dismissal for at least the last eight months.

The second warning came along with the Court's order to file a third amended complaint by December 28, 2023. [Doc. 50, pp. 8–9]. After striking Plaintiff's Second Amended Complaint on Defendants' motion and then striking Plaintiff's First Amended Complaint upon finding that it was a shotgun pleading, the Court again forewarned Plaintiff that if he failed to file a third amended complaint, the Court would dismiss his case. [*Id.* at p. 9]. Once more, the Court explained to Plaintiff that "even a dismissal without prejudice may effectively be a dismissal with prejudice if any claim is now time-barred because the applicable statute of limitations has now expired." [*Id.*].

The third warning can be found in the Court's Rules 16 and 26 Order. [Doc. 65]. In that Order, the Court explicitly warned that "[f]ailure by counsel or parties not represented by counsel to cooperate in the preparation and filing of the report *will* result in sanctions." [*Id.* at p. 2]. The Court further cautioned the parties that "[f]ailure to comply with . . . any order of the Court may result in dismissal of the case, default judgment, or other sanctions." [*Id.*].

The Court issued its fourth and final warning in its Show Cause Order. [Doc. 70]. In that Order, the Court warned Plaintiff that "failure to fully and timely comply" would "result in the immediate dismissal with prejudice of Plaintiff's Third Amended Complaint." [*Id.* at p. 5]. Mindful of the many second chances Plaintiff has received in this case, the Court further warned Plaintiff that "[n]o further warnings w[ould] be

provided." [*Id.*].

The Court recognizes that dismissal with prejudice is a harsh sanction. However, looking back on Plaintiff's continued failure to meet deadlines and his contempt for court orders despite repeated advice and warnings, the Court is left with the firm and clear conviction that no other sanction will suffice.

<u>CONCLUSION</u>

Accordingly, because Plaintiff "stubbornly violated the Federal Rules and court orders" despite being "warned repeatedly of the consequences of misconduct," the Court finds that dismissal is warranted and that a lesser sanction will not suffice. *Moon*, 863 F.2d at 837; *see Gratton*, 178 F.3d at 1375; *Haji*, 834 F. App'x at 563. Thus, the Court exercises the discretion afforded to it by Rules 37(b) and 41(b) and **DISMISSES** this action **with prejudice**. Fed. R. Civ. P. 37(b), 41(b). Next, the Court **DENIES** Defendants' pending Motions to Dismiss **as moot**. [Doc. 56]; [Doc. 57]. The Court **DIRECTS** the Clerk of Court to enter Judgment in favor of Defendants and **CLOSE** this case.

**SO ORDERED**, this 10th day of May, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**